MONIQUE JEAN, Respondent, *v.* ALGONQUIN HOTEL COMPANY, Appellant, Impleaded with FRANK CASE, Defendant.

First Department, December 1, 1939.

*James J. McLoughlin* of counsel [*Robert F. White* with him on the brief; *John J. Kirwan,* attorney], for the appellant.

*Frederick Hemley* of counsel [*Leonard Hemley* with him on the brief; *House, Grossman, Vorhaus & Hemley,* attorneys], for the respondent.

GLENNON, J.   This is a personal injury action.   The plaintiff obtained a recovery in an amount which exceeds by $5,000 the award which she sought to sustain in this court as the result of a prior trial.   The case was here before.   A new trial was ordered for errors committed by the trial justice in the reception of evidence. (*Jean* v. *Algonquin Hotel Co.,* 255 App. Div. 279.)   We are inclined to the view that another trial must be had, since we believe that the present record shows that the verdict is against the weight of the credible evidence, and, in addition thereto, for the errors committed by the court in its charge.

According to plaintiff, on the 22d day of December, 1934, she had an appointment to visit a friend at the Algonquin Hotel. Around two-thirty P. M. she entered a taxicab at Thirty-eighth street and Madison avenue in the city of New York.   It had been snowing and it " was slushy."   Upon her arrival at the hotel she said that the doorman came over to the cab which had stopped short of the entrance.   " He opened the door of the cab and stayed there until I finished paying, and then as I was coming out of the cab, he took my arm and he helped me across the sidewalk, and over a step, and just as we were coming to the place where there was a plate in the floor in front of the revolving door, he suddenly let go of my arm, and jerked it, and that threw me off my balance, and I felt my feet go from under me, I fell, with my feet into the revolving door, and heavy on my back."

She finally testified as to the cause of the fall that it was " the jerk of the arm and the worn condition of the plate."   She admitted that the plate was covered with slush with the exception of a couple of little spots where it could be seen.   She denied that it was the slush alone that caused her to fall.   It should be noted in this connection that neither in her complaint nor in an affidavit which plaintiff verified in April, 1935, nor in her bill of particulars in which the cause of the happening of the accident was described by her, did the plaintiff claim that the doorman jerked her arm with the result that she lost her balance.

It was developed upon cross-examination that on the prior trial she had testified, " When I came out of the hotel, I did not know what caused me to fall, specifically. I was told, however." Again referring to the record on the prior trial, she was asked the following questions: " ' Before you talked to Mr. Greenberger, you did not know what caused you to fall, isn't that so? A. That jerk of the man and that he let go of my arm, I was positive caused me to fall; but I did not know definitely, no, that it was this plate worn off, or what.' That was the truth, wasn't it, when you gave that answer at the last trial, madam? A. Yes; I did not know the plate was worn."

She admitted further that on the prior trial she had sworn, " I saw a metal plate when I walked into the Hotel Algonquin, but I did not realize that that was particularly the place I fell at."

The version of the facts as related by O'Connor, the doorman, who, incidentally, had left the defendant's employ within a short while after the plaintiff was injured, would seem, to say the least, to be more credible than that given by the plaintiff. O'Connor said that the weather was " slushy and sleety; " that he did not see the plaintiff get out of a cab but saw her fall upon her stomach on the sidewalk in front of the hotel. Thereupon he went over and assisted her in getting up and said, " I asked her if she would like to go into the hotel and I brought her into the hotel * * *." Apparently, with the exception of the plaintiff, O'Connor was the only eye witness to the happening of the accident. What motive he could have for falsifying his testimony does not appear. Why he should be kind enough to open the door of plaintiff's cab, as she claimed, and then, after assisting her across the sidewalk and up to the entrance, should jerk her arm in such a way as to cause her to fall immediately outside the revolving doors, we are at a loss to understand. Of course, in view of the condition of the weather, common sense would dictate that it was the slush and snow rather than any so-called jerk of the arm or the worn plate which caused plaintiff to fall.

We next consider the errors in respect to the charge which we believe require a reversal and the ordering of a new trial. During the course of his main charge, the court said in part:

" Now, as I have already told you, the plaintiff's first charge of negligence is based on her claim that the defendant's doorman who undertook to lead her from her taxicab into the hotel had suddenly released his hold on her arm; had caused her to lose her balance and fall. * * * If you determine these matters in accordance with the plaintiff's contention, then you may find that the defendant was negligent in its conduct towards her * * *,

" There is, however, this second charge of negligence, namely, that the defendant maintained the metal plate across the hotel entrance in a worn down and slippery condition, which made it dangerous to life and limb in the circumstances described by the plaintiff * * *.

" If you determine all of the facts as to the metal plate in accordance with the plaintiff's contention, then you may find that the defendant was negligent * * *. If you find from all those facts and circumstances that the defendant was negligent on either one or both of these charges then you must consider another question which is important under the law of negligence: was the plaintiff herself free from contributory negligence? If she was, she may recover in this action * * *."

After an exception was duly noted by defendant's counsel, the following request to charge was made by defendant: " Now, I don't know, if it please the Court, whether this should be in the form of an exception, but I will put it that way, in any event, and I respectfully except to that portion of your Honor's charge wherein you said in words or substance that this jury must consider each of the two allegations of negligence separately, and I, therefore, in conjunction with that ask that you charge them that if they find that O'Connor did not escort this woman to the door or the place where it was claimed — and didn't jerk her arm, that they then must find a verdict for the defendant, because in that event the plaintiff had failed to establish the happening of this accident substantially as they claim it to have happened."

In the light of the statement made by plaintiff that it was the " jerk of the arm and the worn condition of the plate " which caused her to fall, the request should have been granted. Under the charge as given by the court, plaintiff would have been permitted to recover even though the jury did not believe her testimony to the effect that O'Connor had assisted her across the sidewalk and up the steps and had jerked her arm in such a way that she was caused to fall.

Furthermore, upon the proofs as submitted she could not predicate her charge of negligence solely upon the so-called worn down and slippery condition of the metal plate across the hotel entrance. There was no evidence introduced by plaintiff to indicate that there had been any other accidents on the metal plate prior to the time she received her injuries. There was nothing to show that the construction of the entranceway was inherently dangerous. In fact, the sole claim with reference to the plate, as we understand it, was that it had become worn. What effect the snow and sleet would have upon the plate so as to render it more slippery than it would be under ordinary conditions does not appear. Therefore,

the court erred in its refusal to grant the following request to charge: "And I ask your Honor to charge the jury that if it is charged here that the defendant was negligent in omitting to correct the condition of this plate on a rainy day, the plaintiff should have shown, if such was the fact, that there had been accidents of a similar kind on other rainy or slushy days, due to the slipperiness of the surface of the plate, and that notice of the danger on such days of slipping had been brought home to the knowledge of the defendant." (*Miller* v. *Gimbel Bros., Inc.*, 262 N. Y. 107; *Tryon* v. *Chalmers*, 205 App. Div. 816.)

In the light of the main charge with reference to snow and slush, we also believe that the court erred in refusing defendant's request to charge as follows: " I ask your Honor to charge the jury that if they find that snow or slush was the proximate cause of this accident they must bring in a verdict for the defendant."

The only reference of the court in the main charge to snow and slush was as follows: " In connection with this second claim of negligence, I want to say to you that if you find that the plaintiff's fall was due entirely and solely to her slipping on fresh snow or on recently formed slush, and the condition of the metal door step, the metal plate, had nothing to do with it, then you cannot hold the defendant responsible for it."

It will be seen that the court was directing the attention of the jury to snow or slush which may have been on the plate at the entrance. In the event the jury believed that the plaintiff had fallen upon the sidewalk, as asserted by the doorman, there would have been no liability on the part of the defendant for its failure to remove therefrom the snow and slush. For aught we know the jury may have been under the impression that, even though the plaintiff had fallen near the hotel at a place other than she claimed, she would still have been entitled to recover. The following request, which was denied by the court, and an exception duly noted, should have been granted: " Your Honor made some reference to the fact of the plaintiff's contributory negligence as affecting their determination; I now ask you, respectfully, to charge that in this State there is [are] no comparative degrees of negligence; if the plaintiff is negligent it does not matter how slight a degree, if she is negligent at all, that is sufficient to compel them to return a verdict for the defendant."

For the reasons assigned the judgment should be reversed and a new trial ordered, with costs to the appellant to abide the event.

MARTIN, P. J., UNTERMYER, DORE and CALLAHAN, JJ., concur.

Judgment unanimously reversed and a new trial ordered, with costs to the appellant to abide the event.